UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | 5:08-cr-00134 |
| | : | |
| KASEEM DOBSON | : | |

**O P I N I O N**

**Defendant's Motion for Compassionate Release, ECF Nos. 277, 279—DENIED**

**Joseph F. Leeson, Jr.**                                                                                    **March 18, 2021**
**United States District Judge**

**I.      INTRODUCTION**

Defendant Kaseem Dobson has approximately two and one-half months remaining on his 180-month prison sentence for his conviction at trial on multiple charges of, *inter alia*, drug possession, distribution, and conspiracy. Dobson now moves this Court for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). Dobson's motion, which is opposed by the Government, is based on the risk posed to him by the ongoing COVID-19 pandemic in light of his physical condition. For the reasons set forth below, Dobson's motion for compassionate release is denied.

**II.     BACKGROUND**

**A.      Dobson's charges, conviction, and sentence**

On July 8, 2008, Dobson was charged in a superseding indictment with one count of conspiracy to distribute 50 grams or more of crack cocaine, in violation of 21 U.S.C. § 846; one count of conspiracy to possess a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(o); four counts of possession of crack cocaine with intent to distribute, in

violation of 21 U.S.C. § 841(a)(1); four counts of use of a telephone to facilitate the possession of crack cocaine, in violation of 21 U.S.C. § 843(b); and one count of possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c).  *See* ECF No. 47.  The superseding indictment alleged that Dobson conspired with codefendants Dorian Rawlinson and Ralick Cole to distribute crack cocaine in Easton, Pennsylvania, from approximately January 2007 to March 2008.  *See id.*

Dobson went to trial, and on October 20, 2008, he was convicted of the drug conspiracy count, three counts of possession of crack cocaine with intent to distribute, three telephone counts, the Section 924(o) conspiracy offense, and the Section 924(c) offense.  *See* ECF Nos. 136, 202.  On August 27, 2009, Dobson was sentenced to a mandatory minimum sentence of 240 months on the crack cocaine conspiracy count, and a mandatory consecutive sentence of 60 months on the § 924(c) count, followed by a 10-year period of supervised release.  *See* ECF No. 202.  Dobson's conviction and sentence were subsequently affirmed by the Third Circuit, *see United States v. Rawlinson*, 433 F. App'x 99 (3d Cir. 2011), and his petition for habeas relief under 28 U.S.C. § 2255 was denied, *see* ECF Nos. 239-40.

On March 20, 2019, pursuant to an agreement between the parties, this Court reduced Dobson's term of imprisonment to 180 months under Section 404 of the First Step Act of 2018.  *See* ECF No. 266.  With the First Step Act reduction, Dobson's projected release date is June 1, 2021.  In anticipation of this release date, Dobson was transferred to a residential reentry center in September 2020; however, in subsequently testing positive for alcohol and marijuana use, Dobson violated the conditions of his placement.  His residential reentry center placement was revoked accordingly, and he was returned to federal prison.  Dobson is currently being housed at the Metropolitan Detention Center ("MDC") in Brooklyn, New York.

B.     **Dobson's motion for compassionate release**

Dobson has made two filings which, together, the Court construes as a motion for compassionate release. In the first filing, docketed on January 13, 2021, Dobson (i) asserts in relevant part that he has suffered harsh conditions at the Brooklyn MDC as a result of COVID-related mitigation measures; and (ii) expresses his concern for his safety as a result of the prevalence of COVID cases at the facility.[1] *See* ECF No. 277. In the second filing, docketed on March 2, 2021, Dobson states that he has adequately exhausted his administrative remedies, and attaches documents in support of this assertion. *See* ECF No. 279. In addition, Dobson asserts that in light of the number of COVID cases at the Brooklyn MDC, he is in grave danger. In particular, he states that there is "a very high percentage of positive COVID-19 cases" at the Brooklyn MDC and in Dobson's housing unit in particular, that "[t]here have been many COVID-19 related deaths [ ] at MDC Brooklyn," and that "MDC Brooklyn is a COVID-19 death trap." *Id*. Regarding why COVID-19 posses an especially high risk to Dobson, his filing is limited to the following assertion: "I am a medically at risk inmate in accordance with the Centers for Disease Control and Prevention (CDC) guidelines." *Id*. at 3.

C.     **The Government's opposition**

The Government opposes Dobson's motion for compassionate release, contending that the medical or physical condition from which he suffers—mild obesity—while a CDC-

---

[1]     In an Order dated January 15, 2021, the Court addressed this filing. To the extent it sought relief based on independent legal claims, such as unconstitutional conditions of confinement, which claims the Court advised needed to be brought by way of a separate civil action, the Court denied the motion; the Court also denied Dobson's request for compassionate release without prejudice to his re-asserting this request following an indication that his administrative remedies had been exhausted. *See* ECF No. 278.

recognized COVID risk factor, does not, in Dobson's case, warrant compassionate release.[2]  On this point, the Government states as follows:

> Dobson is obese, with a current BMI of 31.7, which is a recognized CDC risk factor. The CDC identifies a body mass index of 30 or higher as a risk factor, while severe obesity (a BMI of 40 or higher) presents a greater risk. Accordingly, Dobson's obesity is a condition that permits consideration of compassionate release during the pandemic. Nevertheless, the defendant's motion should be denied. . . . [U]nder the guideline policy statement, a qualifying medical condition is only one from which the inmate "is not expected to recover." Here, the defendant is only mildly obese, with a current BMI of 31.7, and moves out of the risk zone just by losing a modest amount of weight. Also, he 40 years old and has no other medical conditions.

ECF No. 281 at 13-14.

The Government also contends that other considerations—in particular, the factors set forth in 18 U.S.C. § 3553(a), as well as whether a movant presents a danger to the community—further militate against a grant of compassionate release.  In support of this contention, the Government states that "Dobson was moved to a residential reentry center to complete the remainder of his sentence but violated the conditions of his placement by using alcohol and marijuana. . . . This alone warrants denial of his request for compassionate release."  ECF No. 281 at 15.  And further, that "Dobson's disciplinary record in prison [ ] demonstrates that compassionate release is not warranted. He has committed numerous other infractions, mostly for refusing to comply with prison rules and regulations. He committed a number of these violations in recent years, suggesting that he has not made much progress toward rehabilitation."  *Id*. at 16.

---

[2]   The Government has filed Dobson's medical records under seal as an exhibit in support of its opposition to Dobson's motion.  *See* ECF No. 282.

### III.     LEGAL STANDARD

The First Step Act empowers criminal defendants to request compassionate release with the court after first complying with the exhaustion requirement of 18 U.S.C. § 3582(c)(1)(A).[3] This section mandates that the defendant must first move for compassionate release with the Bureau of Prisons ("BOP"), which then has thirty days to consider the request. *See United States v. Raia*, 954 F.3d 594, 595-97 (3d Cir. 2020) (holding that the risk COVID-19 poses in the federal prison system does not excuse the exhaustion requirement).

Once a defendant satisfies the exhaustion requirement,[4] a court may reduce a term of imprisonment if it finds, that "extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). *See also* 28 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered

---

[3]     Section 3582(c) is actually part of the Sentencing Reform Act of 1984, but was amended by the First Step Act ("FSA") to provide prisoners a more direct route to court for relief. As one court in this District recently observed,

> [t]he concept of compassionate release is not a novel one. It was created with the Comprehensive Crime Control Act of 1984 . . . . Under the compassionate release provision as originally written in 1984, a motion for compassionate release could only be brought by [BOP]. In December of 2018 Congress enacted the FSA. And the FSA—for the purpose of increasing the use and transparency of compassionate release, as the relevant section is titled—amended the compassionate release provision to allow a motion brought directly by the defendant. Thus, while the BOP was the gatekeeper to compassionate release under the Comprehensive Crime Control Act of 1984, the FSA divested the BOP of this sole gatekeeper role.

*United States v. Andrews*, *United States v. Andrews*, 480 F. Supp. 3d 669, 675 (E.D. Pa. 2020) (internal citations omitted).

[4]     The Court has already found that Dobson satisfied his obligation to exhaust his administrative remedies, and as such does not address this point further. *See* ECF No. 280. Nor does the Government challenge exhaustion.

extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.").

Section 1B1.13 of the United States Sentencing Guidelines in turn provides the relevant "policy statements." Under U.S.S.G. § 1B1.13, a court may reduce a term of imprisonment pursuant to 18 U.S.C. § 3582(c)(1)(A) "if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that . . . extraordinary and compelling reasons warrant the reduction; . . . the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and [ ] the reduction is consistent with this policy statement." The Sentencing Commission has advised that a defendant's physical or medical condition satisfies the "extraordinary and compelling" standard if, in relevant part:

> (i) The defendant is suffering from a terminal illness . . . . [Or]
>
> (ii) The defendant is—
>
>> (I) suffering from a serious physical or medical condition,
>>
>> (II) suffering from a serious functional or cognitive impairment, or
>>
>> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

*Id.*, App. Note 1.

Importantly, as the terms of the statute indicate, compassionate release is an "extraordinary" form of relief. *See United States v. Adeyemi*, 470 F. Supp. 3d 489, 512 (E.D. Pa.

2020). The burden is on the defendant to show that his circumstances present "extraordinary and compelling reasons" which justify compassionate release. *Id*. at 501.

IV.     **DISCUSSION**

As noted, Dobson states that he is "a medically at risk inmate in accordance with the Centers for Disease Control and Prevention (CDC) guidelines." ECF No. 279 at 3. Although Dobson does not state *why* he is "a medically at risk inmate," the Government does not dispute that Dobson is "obese" as defined by the CDC. Dobson's medical records indicate that as of February 23, 2021, he weighed 234 pounds and was 72 inches, or six feet, in height. *See* ECF No. 282 at 39. With this weight and height, Dobson has a body mass index ("BMI") of 31.7. According to the CDC, "[a]n adult who has a BMI of 30 or higher is considered obese."[5] It is similarly undisputed that, according to the CDC, an individual suffering from obesity is "at increased risk of severe illness from the virus that causes COVID-19."[6] However, Dobson does not state that he suffers from any other medical conditions which would place him at an increased risk of severe illness from COVID-19. Nor is there any indication from his medical records that Dobson, who is 40 years old, suffers from any other such conditions. *See* ECF No. 282 at 40 (noting that as of February 23, 2021, Dobson "denie[d] any unaddressed health issues or medical conditions").

The central question then for purposes of Dobson's motion is, in the absence of any other medical conditions which would tend to increase his risk of serious illness from COVID-19, whether his obesity, which is mild, presents "extraordinary and compelling reasons" for a

---

[5]     https://www.cdc.gov/ncbddd/disabilityandhealth/obesity.html (March 17, 2021, 2:41 PM).
[6]     https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html  (March 17, 2021, 2:45 PM).

reduction of his sentence. 18 U.S.C. § 3582(c)(1)(A)(i). As explained above, the Sentencing Commission has promulgated guidelines advising that an individual's circumstances present "extraordinary and compelling reasons" for a sentence reduction where, as relevant here, the individual is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13, App. Note 1. Therefore, if, in light of the risks posted by COVID-19 at the Brooklyn MDC, Dobson can show that his mild obesity is a serious condition (1) that substantially diminishes his ability to provide self-care and (2) from which he is not expected to recover, he may be entitled to a reduction of his sentence. However, after consideration of the parties' arguments and the relevant medical records, the Court is forced to conclude, for several reasons, that Dobson has failed to meet this burden.

First, Dobson has failed to make *any* showing that his mild obesity is a condition that either substantially diminishes his ability to provide self-care, or is a condition from which he is not expected to recover. As noted, Dobson's showing in this regard is limited to the averment that he is "a medically at risk inmate in accordance with the Centers for Disease Control and Prevention (CDC) guidelines." ECF No. 279 at 3. In the absence of some evidence to the contrary, it is not apparent to the Court how mild obesity would diminish Dobson's ability to provide self-care, or how this condition could be considered one from which Dobson is not expected to recover. Both showings—diminished ability to provide self-care and no expectation of recovery—are required for Dobson to meet his burden; he has made neither.

Dobson's medical records also fail to provide support for the proposition that his mild obesity diminishes his ability to provide self-care or that it can be considered a condition from

which he is not expected to recover. To the contrary, his medical records indicate that Dobson is capable of fully functioning within the Brooklyn MDC to the extent permitted by the facility's protocols. *See* ECF No. 282 at 36-46. His medical records moreover show that he is likely capable of recovering from his obesity—*i.e.*, capable of losing weight. Specifically, the medical records indicate that Dobson's weight of 234 pounds as measured on February 23, 2021, was itself a decrease from his weight of 247 pounds as measured on November 7, 2020. *See* ECF No. 282 at 33. This supports an inference that Dobson is capable of lowering his weight, and therefore his BMI, to a point where he would no longer be considered obese under the relevant CDC guidelines, and any increased risk of serious illness from COVID-19 would similarly dissipate.

Finally, case law in this Circuit does not provide support for Dobson's motion for compassionate release; to the contrary, cases on similar facts support the findings described in the preceding paragraph—in particular, that mild obesity is not, by itself, sufficient to present "extraordinary and compelling reasons" to reduce a prisoner's sentence.[7] *See United States v. Irizzary*, No. CR 14-652-13, 2021 WL 735779, at *5 (E.D. Pa. Feb. 25, 2021) (denying compassionate release where movant had a "body mass index of 33.1, falling near the 'low end of the obesity spectrum,'" and observing that "[c]ourts have been reluctant in general to grant compassionate release where . . . *mild* obesity is the only risk factor presented" (emphasis in original)); *United States v. Collazo*, No. CR 99-304, 2021 WL 632678, at *3 (E.D. Pa. Feb. 18,

---

[7] This conclusion is no less true with specific regard to conditions at MDC Brooklyn. The Court credits the Government's representation that as of the date of the filing of its opposition to Dobson's motion, (i) MDC Brooklyn housed 1,176 inmates, (ii) there was only one inmate who tested positive and was isolated while he was treated, (iii) 362 inmates had previously tested positive and had recovered, and (iv) there had been only one COVID-related death. *See* ECF No. 281 at 7.

2021) (denying defendant's motion for compassionate release where defendant had a BMI of 32.4 and suffered from hypertension, noting that "courts have been reluctant in general to grant compassionate release where, as here, mild obesity is the only risk factor presented," and collecting cases); *United States v. Williams*, 2020 WL 4756743 (E.D. Pa. Aug. 17, 2020) (finding defendant with a BMI of 31.5 and asthma did not present extraordinary circumstances warranting compassionate release); *United States v. Whiteman*, 2020 WL 4284619, at *1 (E.D. Pa. July 27, 2020) (finding that mild obesity and hypertension of a 42-year-old defendant fell short of establishing extraordinary circumstances).

Because the Court has determined that Dobson has not presented—and, according to his medical records, likely cannot present—"extraordinary and compelling reasons" to reduce his sentence, he has failed to satisfy the central inquiry relative to his motion for compassionate release. *See* 18 U.S.C. § 3582(c)(1)(A)(i). His motion therefore fails, and the Court declines to address whether Dobson would present a danger to the community if released, whether release would be consistent with the Sentencing Commission's policy statement, or whether compassionate release would be consistent with the factors set forth in 18 U.S.C. § 3553(a). *See, e.g.*, *United States v. McNair*, 481 F. Supp. 3d 362, 370 n.8 (D.N.J. 2020) ("[I]f a court finds 'extraordinary and compelling' reasons justify a modification in a prisoner's sentence, the court must also decide whether to grant compassionate release by weighing the sentencing factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable. Because I find that 'extraordinary and compelling' reasons are not present here, I do not reach the second part of the analysis."); *see also United States v. Andrews*, 480 F. Supp. 3d 669, 688 (E.D. Pa. 2020).

## V. CONCLUSION

For the reasons set forth above, Dobson's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) is denied.

A separate Order follows this Opinion.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge
